IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **OUDEOM VILAYPHUNH,** | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 25-CV-4478 |
| | : | |
| **BRENTON L. SAUNDERS,** | : | |
| Defendant. | : | |

**MEMORANDUM**

**HODGE, J.**                                                                                  **AUGUST 19, 2025**

Plaintiff Oudeom Vilayphunh, a prisoner currently incarcerated at SCI Mahanoy, brings this civil action against Brenton L. Saunders, who is identified in the Complaint as C.E.O. of Forest Laboratories, Inc. (Compl. at 5.) The gist of Vilayphunh's Complaint is that Forest Laboratories distributed and produced Lexapro, which was prescribed to Vilayphunh for a period of time to treat depression and reportedly caused him to experience night terrors. According to Vilayphunh, it was during one of these night terrors that he committed a homicide and, later, fell out of a bed while incarcerated. (*Id.*) Vilayphunh seeks leave to proceed *in forma pauperis* (ECF No. 1). For the following reasons, the Court will grant him leave to proceed *in forma pauperis* and dismiss his Complaint for lack of subject matter jurisdiction.

**I.     FACTUAL ALLEGATIONS**[1]

In July 2020, Vilayphunh was prescribed Lexapro "to treat his depression and anxieties." (Compl. at 15.) Although the medication helped with those symptoms, it also caused Vilayphunh

---

[1] The following allegations are taken from the Complaint and public dockets, of which this Court may take judicial notice. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). The Court adopts the sequential pagination supplied to the Complaint by the CM/ECF docketing system.

to experience side effects, including night terrors that "progressively became more frequent, sometimes in his naps as well." (*Id.*) "In the early morning of July 7, 2021, [Vilayphunh] had a terrible night terror, walked around while asleep, and unconsciously shot his brother critically, and severely injur[ed] his father." (*Id.*) Vilayphanh alleges that he did not return "to consciousness" until he was in the back of a police cruiser with his hands cuffed behind his back. (*Id.*) He does not remember key events from that night. (*Id.* at 15-16.)

Vilayphanh was criminally charged based on that evening's events and was convicted in the Philadelphia Court of Common Pleas of third-degree murder and other crimes. (*Id.* at 16); *see Commonwealth v. Vilayphunh*, Nos. CP-51-CR-0008800-2021; CP-51-CR-0008799-2021; CP-51-0008798-2021 (C.P. Phila.). He was sentenced to a term of 14 to 28 years of incarceration. (Compl. at 16.) While Vilayphanh was incarcerated at the Curran-Fromhold Correctional Facility ("C.F.C.F.") in connection with those criminal proceedings, he "continued to take Lexapro" for his worsening depression, and "was given the highest dose allowed by the Philadelphia County Prison's Psychiatrist." (*Id.* at 17.) He continued to have "severe night terrors," including one on September 26, 2023 that caused him to fall from his top bunk bed. (*Id.*) Vilayphanh was taken to a hospital following the fall, where he was treated for a broken collar bone. (*Id.*)

Vilayphanh alleges that in January 2024, at a time when he was incarcerated at SCI Camp Hill, he began to suspect that Lexapro "may have had a role in producing his night terrors." (*Id.*) He discussed this issue with the prison's psychiatrist, who switched Vilayphunh's medication. (*Id.* at 17-18.) Following the switch, Vilayphunh stopped experiencing night terrors. (*Id.* at 18.)

Vilayphanh attributes the killing of his brother and wounding of his father, as well as the injuries he sustained when he fell out of bed at C.F.C.F., to "being under the influence of Lexapro." (*Id.* at 7.) He brings this lawsuit against Saunders because he "was the C.E.O. of

2

Forest L[a]boratories Inc. that authorized the release of the adverse substance, Lexapro, to the public." (*Id.* at 5.) Vilayphunh seeks $28 million in damages to compensate him for injuries he sustained in the form of PTSD, a need for life-time physical therapy and psychiatric treatment, a fractured collar bone, and the loss of his brother. (*Id.* at 5, 7.)

## II.     STANDARD OF REVIEW

The Court will grant Vilayphunh leave to proceed *in forma pauperis* because it appears he is incapable of paying the fees to commence this civil action.[2] Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to screen the Complaint and dismiss it if it is frivolous, malicious, fails to state a claim for relief, or seeks damages from an immune defendant. Furthermore, the Court must dismiss the Complaint if it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Grp. Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*"). A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence."). "Jurisdictional [issues] . . . may be raised at any time and courts have a duty to consider them *sua sponte*." *Wilkins v. United States*, 598 U.S. 152, 157 (2023) (internal quotations omitted). As Vilayphunh is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).

---

[2] As Vilayphunh is a prisoner, he will be obligated to pay the fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

### III. DISCUSSION

#### A. Federal Claims

Vilayphunh attempts to invoke this Court's federal question jurisdiction, 28 U.S.C. § 1331, and its jurisdiction over civil rights claims, *id.* § 1343, by listing assorted federal statutes — including 42 U.S.C. §§ 1981, 1983, 1985(3), 1986, 1988, and federal criminal statutes — that he contends were violated as a result of Saunders's decision to distribute Lexapro. The listed statutes, which proscribe race discrimination in contracts, constitutional violations by state actors (which Saunders is not), and race or class-based conspiracies, are wholly inapplicable to the facts alleged in the Complaint and, in the case of criminal statutes, do not provide a legal basis for a civil claim. *See Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474 (2006) (explaining that § 1981 "protects the equal right of '[a]ll persons within the jurisdiction of the United States' to 'make and enforce contracts' without respect to race" (quoting § 1981(a))); *Cent. Bank of Dover, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) ("We have been quite reluctant to infer a private right of action from a criminal prohibition alone[.]"); *West v. Atkins*, 487 U.S. 42, 48 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."); *Moor v. Alameda Cnty.*, 411 U.S. 693, 703-04 (1973) (explaining that § 1988 does not provide a basis for a claim but instead complements other civil rights statutes); *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997) ("[T]he reach of section 1985(3) is limited to private conspiracies predicated on racial, or perhaps otherwise class based, invidiously discriminatory animus." (internal quotations omitted)); *Clark v. Clabaugh*, 20 F.3d 1290, 1295 (3d Cir. 1994) ("[Section] 1986 constitutes an additional safeguard for those rights protected under 42 U.S.C. § 1985, and 'transgressions of §

1986 by definition depend on a preexisting violation of § 1985.'" (quoting *Rogin v. Bensalem Twp.*, 616 F.2d 680, 696 (3d Cir. 1980)). Since the listed statutes are clearly inapplicable and appear to have been invoked "solely for the purpose of obtaining jurisdiction," the Court concludes that Vilayphunh's Complaint does not raise a substantial federal question that would justify exercising jurisdiction under either § 1331 or § 1343. *See Shapiro v. McManus*, 577 U.S. 39, 45 (2015) ("We have long distinguished between failing to raise a substantial federal question for jurisdictional purposes . . . and failing to state a claim for relief on the merits; only 'wholly insubstantial and frivolous' claims implicate the former."); *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1408-09 (3d Cir. 1991) (dismissal of claims for lack of jurisdiction is proper when the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous" (citation omitted); *see also Yoder v. Morrow*, 671 F. App'x 27, 29 (3d Cir. 2016) (*per curiam*) (affirming dismissal for lack of subject matter jurisdiction because "[a]lthough Yoder's complaint purported to rely on 42 U.S.C. § 1983, her allegations do not actually implicate that federal statute").

### B.  State Claims

Despite the listed federal statutes, the Complaint is best construed as raising tort claims under Pennsylvania law. *See Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 248 (3d Cir. 1999) ("We apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name."). District courts may exercise jurisdiction over cases raising claims exclusively under state law if "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). "Complete diversity requires that, in cases with multiple plaintiffs or multiple defendants, no plaintiff be a citizen of the same state as any defendant." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d

412, 419 (3d Cir. 2010). For diversity purposes, an individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011).

Several factors may be relevant in determining an individual's domicile, including "declarations, exercise of political rights, payment of personal taxes, house of residence, and place of business," as well as "location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, and driver's license and vehicle registration." *McCann v. Newman Irrevocable Tr.*, 458 F.3d 281, 286 (3d Cir. 2006). "A person may have only one domicile, and thus may be a citizen of only one state for diversity jurisdiction purposes." *Dalgic v. Misericordia Univ.*, No. 16-443, 2016 WL 1076937, at *1 (M.D. Pa. Mar. 18, 2016); *see Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006) ("An individual who resides in more than one State is regarded, for purposes of federal subject-matter (diversity) jurisdiction, as a citizen of but one State."). "[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment." *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010).

The Complaint does not adequately allege the parties' citizenship, so the Court cannot exercise diversity jurisdiction over any state claims. Vilayphunh is currently incarcerated in Pennsylvania, and although the record reflects that his parents reside (or resided) in Pennsylvania, it is not clear from the Complaint where he was domiciled prior to his incarceration. Nor is it clear from the Complaint where Saunders is domiciled, for despite implying that Saunders is a prior C.E.O. of Forest Laboratories, the Complaint lists a business address for Saunders at Forest Laboratories in New York, which is insufficient to allege

Saunders's citizenship.[3] Moreover, a current work address would not provide a sufficient basis to establish Saunders's domicile. For these reasons, the Court does not have sufficient information to determine the domicile of either party and, thus, may not exercise jurisdiction over Vilayphunh's state claims.

## IV.   CONCLUSION

For the foregoing reasons, the Court will dismiss this case for lack of subject matter jurisdiction. The dismissal will be without prejudice to Vilayphunh's ability to file an amended complaint in this Court or to file a complaint in the proper state court.[4] An appropriate Order follows, which provides further instructions.

BY THE COURT:

/s Kelley B. Hodge

**KELLEY BRISBON HODGE, J.**

---

[3] It is not clear that Forest Laboratories still exists as a corporate entity. *See Wenke v. Forest Lab'ys, Inc.*, 796 F. App'x 383, 384 n.1 (9th Cir. 2020) ("As of January 1, 2018, Forest Laboratories merged into Allergan Sales"); *United States ex rel. Sheldon v. Forest Lab'ys, LLC*, 754 F. Supp. 3d 615, 624 (D. Md. 2024) ("According to the parties, as of January 1, 2018, Forest Laboratories, LLC and Forest Pharmaceuticals, Inc. merged into Allergan Sales, LLC ('Allergan'), and 'no longer exist.'").

[4] The Court expresses no opinion at this time on the merits of Vilayphunh's tort claims. The Court notes, however, that if Vilayphunh returns with an amended complaint in this Court, he must allege sufficient facts to both justify this Court's exercise of jurisdiction and to state a plausible claim against each named defendant. This means Vilayphunh must allege facts explaining what each defendant did or did not do that caused him harm, rather than relying on undeveloped legal conclusions to state a claim. *See generally Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").