**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **OUDEOM VILAYPHUNH,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 25-CV-4478** |
| | : | |
| **ABBVIE, INC.,** | : | |
| **Defendant.** | : | |

**MEMORANDUM**

**HODGE, J.** **August 3, 2026**

Currently before the Court is a Motion to Dismiss and for a More Definite Statement as to Plaintiff Oudeom Vilayphunh's ("Vilayphunh") Amended Complaint (ECF No. 20 (the "Motion")) and Motion for Discovery (ECF No. 33), which alleges that he shot family members and subsequently fell off a bunk bed in prison while experiencing night terrors as a side effect from taking Lexapro, which he alleges was distributed by Defendant AbbVie, Inc. For the following reasons, the Court will grant the Motion. The Court will deny Vilayphunh's Motion for Discovery.

## I. FACTUAL ALLEGATIONS[1]

Vilayphunh was prescribed "Lexapro (Escitalopram)" in July 2020 "to treat his depression and anxieties." (Am. Compl. at 7.) Although the medication alleviated his depression, he also "started having mild night terrors occasionally." (*Id.*) In the following

[1] The factual allegations in this Memorandum are taken from Vilayphunh's Amended Complaint, (ECF No. 7 ("Am. Compl.")), which is the operative pleading in this case. *See Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025) ("If a plaintiff amends her complaint, the new pleading 'supersedes' the old one: The 'original pleading no longer performs any function in the case.'" (citation omitted)). The Court adopts the pagination supplied to the parties' filings by the CM/ECF docketing system.

months "the night terrors progressively became more frequent, sometimes in his naps as well." (*Id.*) Additionally, Vilayphunh "started experiencing agitation, irritability, [confusion], memory problems, sleeping disorders, weariness, muscle twitching, blurred and tunnel visions, mild [hallucinations], irregular and rapid heartbeat, mood swings, and suicidal thought[s]." (*Id.*)

In the early hours of July 7, 2021, Vilayphunh "had a terrible night terror, walked around while asleep, . . . unconsciously shot his brother critically, and severely injur[ed] his father." (*Id.*) When Vilayphunh regained consciousness, he was handcuffed in the back of a police vehicle and was in "excruciating pain." (*Id.*) He was taken to the hospital to treat "cuts and bruises throughout his body"—which he apparently incurred as a result of an interaction with the responding officers—and was then interrogated by police. (*Id.* at 8.) He was ultimately charged with and convicted of third-degree murder, first-degree assault, and two counts of aggravated assault on a police officer, and sentenced to a term of fourteen to twenty-eight years of incarceration.[2] (*Id.*)

Vilayphunh was incarcerated at the Curran-Fromhold Correctional Facility ("CFCF") during the criminal proceedings. (*See id.* at 9.) His depression worsened during his incarceration, so he continued to take Lexapro as prescribed by the facility's psychiatrist at "the highest dose allowed." (*Id.*) Vilayphunh "continued to have fre[q]uent severe night terrors." (*Id.*) On September 26, 2023, he "had a severe night terror and fell off the top bunk bed that he was assigned," fracturing his right collar bone. (*Id.*)

---

[2] Public dockets reflect that Vilayphunh was convicted on May 25, 2023. *Commonwealth v. Vilayphunh*, Nos. CP-51-CR-8798-2021; CP-51-CR-0008799-2021; CP-51-CR-0008800-2021 (C.P. Phila.). His convictions were affirmed on appeal. In June 2026, his petition for post-conviction relief was granted. The basis for the ruling is not apparent from the docket. An appeal is pending.

Vilayphunh alleges that "[i]n January 2024, while [he] was incarcerated at the State Correctional Institution Camp Hill (SCI Camp Hill), he [started] to suspect that his anti-depression medication, Lexapro, may have had a role in producing his night terrors." (*Id.*) After discussing the matter with a psychiatrist, Vilayphunh switched to a different medication. (*Id.* at 9–10.) He "started to realize that he no longer continued to have night terrors since the cessation of the Lexapro." (*Id.* at 10.)

Vilayphunh brings tort claims against AbbVie pursuant to the Court's diversity jurisdiction, *see* 28 U.S.C. § 1332, based on the 2021 shooting incident and his 2023 fall from the bunk bed.[3] (*See* Am. Compl. at 5–6 (alleging that Vilayphunh is a citizen of Pennsylvania and AbbVie is a citizen of Illinois).) He claims that he "has severe PTSD" as a result of the events described in his Amended Complaint and "may need a life time of Psychiatric Treatment." (*Id.* at 12.) He seeks $28 million in compensation. (*Id.*)

## II. PROCEDURAL HISTORY

On August 4, 2025, the Court received Vilayphunh's initial Complaint, which is dated July 27, 2025, along with his Motion to Proceed *In Forma Pauperis* and related paperwork. (ECF Nos. 1–3.) The Court granted Vilayphunh leave to proceed *in forma pauperis*, screened his initial Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and for jurisdictional issues, and dismissed the Complaint with leave to amend. (ECF Nos. 5-6.) Vilayphunh returned with the operative Amended Complaint against AbbVie, which the United States Marshal Service served effectively. (ECF Nos. 7, 18.)

[3] Federal courts sitting in diversity apply the substantive law of the forum state. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). The parties do not dispute that Pennsylvania law governs Vilayphunh's claims.

On January 28, 2026, AbbVie filed a Motion to dismiss Vilayphunh's claims based on the 2021 shooting incident as time-barred, and for a more definite statement as to his claims based on the events of 2023. (*See generally* ECF No. 20.) The Motion was served on Vilayphunh on January 30. (ECF No. 24.) In consideration of Vilayphunh's status as an incarcerated individual who is representing himself, the Court issued a briefing schedule providing him fifty days to respond to the Motion (forty-eight days from the date of service), (ECF No. 23), which is considerably more time than the fourteen days Local Rule 7.1(c) provides for a response to a motion. The Court also granted Vilayphunh two extensions to respond to AbbVie's Motion. (ECF Nos. 27, 30). When granting Vilayphunh's second extension request, the Court explained that "[n]o further extensions [would] be granted," and that his case could be dismissed for failure to prosecute if he did not respond by June 3. (ECF No. 30.) He nevertheless moved for another extension. (ECF No. 31.) The Court denied that extension but, again in consideration of his *pro se* and incarcerated status, gave him "an opportunity to cure by filing a response to the best of his ability" within twenty-one days. (ECF No. 32.) Vilayphunh responded by filing a combined Response and Motion for Discovery. (ECF No. 33.) AbbVie responded to Vilayphunh's Motion for Discovery and also filed a reply as permitted by the Court's briefing schedule. (ECF Nos. 23, 34, 35.) The Motions are now fully briefed and before the Court for resolution.

## III. STANDARDS OF REVIEW

### A. Rule 12(b)(6) Standard

"A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (citing *Ditri v. Coldwell Banker Residential Affiliates, Inc.*, 954 F.2d 869, 871 (3d Cir. 1992)). In deciding a motion to dismiss under Rule

12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (citation modified).

In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). To determine whether a complaint filed by a *pro* se litigant states a claim, a court must accept the facts alleged as true, draw all reasonable inferences in favor of the plaintiff, and "ask only whether that complaint, liberally construed contains facts sufficient to state a plausible . . . claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (citation modified), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024); *see also Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (*pro se* filings are construed liberally). It is the defendants' burden to show that a complaint fails to state a claim. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (explaining that on a Rule 12(b)(6) motion to dismiss, the "defendant bears the burden of showing that no claim has been presented"). Additionally, dismissal of a complaint based on the statute of limitations is

appropriate at the pleading stage provided the "defense is apparent on the face of the complaint." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017) (citing *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014)).

**B. Rule 12(e) Standard**

A party may "move for a more definite statement of a pleading" pursuant to Rule 12(e) in response to a pleading that is "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). A motion for a more definite statement under Rule 12(e) is "the best procedural tool available to the defendant to obtain the factual basis underlying a plaintiff's claim for relief" when a pleading does not disclose the facts underlying a plaintiff's claims. *Thomas v. Indep. Twp.*, 463 F.3d 285, 301 (3d Cir. 2006). Such a motion "is directed to the rare case where because of the vagueness or ambiguity of the pleading the answering party will not be able to frame a responsive pleading." *Wadhwa v. Sec'y, Dep't of Veterans Affs.*, 505 F. App'x 209, 214 (3d Cir. 2012) (*per curiam*) (quoting *Schaedler v. Reading Eagle Publ'n Inc.*, 370 F.2d 795, 798 (3d Cir. 1967)); *see also Seamans v. Tramontana*, Civil Action No. 13-0698, 2013 WL 5728670, at *3 (M.D. Pa. Oct. 22, 2013) ("[T]he pleading must be so unintelligible that a court cannot determine one or more potentially valid claims on which a party may proceed to require a more definite statement."); *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 232-33 (D.N.J. 2003) ("The prevailing standard employed by district courts in this Circuit is to grant such a motion when the pleading is so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith, without prejudice to itself." (citation modified)). Whether to grant a Rule 12(e) motion based on a litigant's failure to comply with the procedural rules governing pleading is "a matter committed largely to the discretion of the

district court." *MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 737, 232 (D.N.J. 2008) (quoting *Clark*, 213 F.R.D. at 232).

## IV. DISCUSSION

### A. Vilayphunh's Claims Based on the Events of 2021 are Time Barred

AbbVie argues that Vilayphunh's claims based on the events of 2021, when he shot family members while experiencing a night terror, are barred by the applicable two-year statute of limitations. (ECF No. 20-2 at 12.) The Court understands Vilayphunh to be pursuing product liability claims against AbbVie for distributing Lexapro, the medication he claims caused the night terror he experienced during which he unconsciously shot his family members. *See Holley v. Dep't of Veteran Affs.*, 165 F.3d 244, 248 (3d Cir. 1999) ("We apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name."). In Pennsylvania, such claims are governed by the two-year statute of limitations for personal injury actions. *See Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 152 (3d Cir. 1998); *Hahn v. Atl. Richfield Co.*, 625 F.2d 1095, 1104 (3d Cir. 1980); *see also* 28 Pa. Cons. Stat. Ann. § 5524(7).

"[T]he statute of limitations begins to run as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations . . . ." *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983). However, the discovery rule may operate to delay the running of the statute of limitations "where the plaintiff is reasonably unaware that he has been injured and that his injury has been caused by another party's conduct." *Nicolaou v. Martin*, 195 A.3d 880, 892 (Pa. 2018). The discovery rule is one of "inquiry notice." *Rice v. Diocese of Altoona-Johnstown*, 255 A.3d 237, 249 (Pa. 2021). "As the discovery rule has developed, the salient point giving rise to its application is the inability of the injured, despite the exercise of reasonable diligence, to know

that he is injured and by what cause." *Fine v. Checcio*, 870 A.2d 850, 859 (Pa. 2005). "The party claiming the benefit of the discovery rule has the burden of demonstrating that it applies, and must establish reasonable diligence in investigating his or her physical condition, with 'reasonableness' considered under an objective standard." *Moyer v. United Dominion Indus., Inc.*, 473 F.3d 532, 547 (3d Cir. 2007) (citation omitted); *see also Am. Builders Ins. Co. v. Keystone Insurers Grp., Inc.*, No. 23-2606, 2024 WL 3898614, at *1 (3d Cir. Aug. 22, 2024) ("The party seeking to invoke the discovery rule bears the burden of establishing the inability to know of the injury despite the exercise of reasonable diligence." (quoting *Dalrymple v. Brown*, 701 A.2d 164, 167 (Pa. 1997))).

"[T]he question is not what the plaintiff actually knew of the injury or its cause, but what he might have known by exercising the diligence required by law." *Nicolaou*, 195 A.3d at 893 (citations omitted). This "is not an absolute standard but, rather, is 'what is expected from a party who has been given reason to inform himself of the facts upon which his right of recovery is premised.'" *In re Risperdal Litig.*, 223 A.3d 633, 640 (Pa. 2019). "Demonstrating the expected diligence requires a plaintiff to establish a display of 'those qualities of attention, knowledge, intelligence, and judgment which society requires of its members for the protection of their own interests and the interests of others.'" *Knopick v. Connelly*, 639 F.3d 600, 611 (3d Cir. 2011) (quoting *Wilson v. El-Daief*, 964 A.2d 354, 363 n.6 (Pa. 2009)). Courts may apply the discovery rule as a matter of law where "reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause." *Mariner Chestnut Partners, L.P. v. Lenfest*, 152 A.3d 265, 279 (Pa. Super. Ct. 2016).

Vilayphunh alleges that he experienced occasional night terrors after he was prescribed Lexapro in July 2020, and that as the months progressed, "the night terrors progressively became

more frequent," culminating in the events of July 7, 2021, when he shot his family members during a severe night terror, killing his brother and wounding his father. (Am. Compl. at 7.) The Amended Complaint therefore makes clear that Vilayphunh incurred the harm giving rise to this claim on July 7, 2021. A prisoner's complaint is considered filed at the time he hands it over to prison authorities for forwarding to the Court. *See Houston v. Lack*, 487 U.S. 266, 276 (1988); *Moody v. Conroy*, 680 F. App'x 140, 144 (3d Cir. 2017) (*per curiam*). Vilayphunh's initial Complaint is dated July 27, 2025, so that is the earliest date he could have handed it to prison authorities or mailing. Since Vilayphunh filed this case more than four years after the shooting incident, his claims are time barred unless the discovery rule applies.

Although Vilayphunh does not argue for application of the discovery rule, (*see* ECF No. 33), the Court will consider whether it saves his untimely claims since the Amended Complaint suggests he did not know the cause of his harm until January 2024, when he "started to suspect that . . . Lexapro[] may have had a role in producing his night terrors." (Am. Compl. at 9.) Vilayphunh's own allegations reflect that he first experienced night terrors after he started taking Lexapro, and that the night terrors worsened over the next year to the point he shot and killed family members while experiencing one. It is not clear whether Vilayphunh's treating physician talked to him about potential side effects of Lexapro, including the possibility of night terrors. However, Vilayphunh experienced night terrors as an alleged side effect shortly after he began taking it. While that fact alone may not necessarily have required him to begin investigating the source of his night terrors, the night terrors allegedly increased in such severity that he unconsciously shot and killed family members during one. The severity of this incident was sufficient to trigger an obligation to, at a minimum, address the night terrors with a physician and/or psychiatrist. *See Knopick*, 639 F.3d at 612 ("[I]f something exists to trigger the inquiry,

then the plaintiff must demonstrate that he conducted an investigation, and despite doing so, did not discover his injury."); *In re Risperdal Litig.*, 223 A.3d at 644 (explaining that, although "the mere experience of a physical condition does not trigger any obligation to actively seek out further information," reasonable diligence is required if there is "some reason to awaken inquiry and direct diligence in the channel to which it would be successful" (quotations omitted)).

To the contrary, Vilayphunh's allegations suggest that he did not address his night terrors with a medical professional until January 2024, at which point the psychiatrist changed his medications and he stopped experiencing night terrors. (Am. Compl. at 9-10.) Based on the allegations of the Amended Complaint, the cause of Vilayphunh's night terrors—which led to the harm in this case—was just as knowable to him in 2021 as it was in 2024 had he conducted any inquiry into their source. These facts, obtained from the face of the Amended Complaint, reflect that Vilayphunh's claims based on the 2021 shooting incident are time barred.[4] *See Cochran v. GAF Corp.*, 666 A.2d 245, 250 (Pa. 1995) (holding that "reasonable minds could not differ as to the decedent's lack of reasonable diligence" where he "waited four years before diligently pursuing the cause of his illness"); *see generally Knopick*, 639 F.3d at 612 ("[I]f something exists to trigger the inquiry, then the plaintiff must demonstrate that he conducted an investigation, and despite doing so, did not discover his injury.").

Vilayphunh's response does not address AbbVie's argument on these points. Rather, he claims, citing various exhibits, that AbbVie does not want "The Truth To Come Ou[t] In The

[4] Additionally, public records, which the Court may consider at this stage of the litigation, *see Schmidt*, 770 F.3d at 249, reflect that Vilayphunh's mental state, as affected by his medication, was at issue in his criminal trial, *see Commonwealth v. Vilayphanh*, 336 A.3d 961, 2025 WL 763919, at *2–3, *3 n.7 (Pa. Super. Ct. 2025). This provides further support for the Court's conclusion that Vilayphunh's obligation to exercise reasonable diligence was triggered more than two years before he initiated this lawsuit.

Open For The Public To Know That The Medication That Abbvie Inc. Is Distribut[ing] is Nothing But Poison That Has [cost him] His Freedom." (ECF No. 33 at 3–4 (citation modified).) Those exhibits include what appear to be excerpts summarizing studies by Dr. Karl Doghramj that were "released in Feb. 2005" linking Lexapro with sleep terrors and somnambulism—defined as "complex behaviors occur[ing] during sleep, usually with the eyes open but without evidence of recognition"—and a copy of the Physician's Desk Reference from 2007, showing an increase in incidents of somnolence for patients taking Lexapro over those taking a placebo. (*Id.* at 12–22.) Although the Court may not consider these exhibits at this stage of the litigation, *see Schmidt*, 770 F.3d at 251–53, it is worth noting that they suggest night terrors were a known side effect of Lexapro as early as 2005, bolstering the conclusion that Vilayphunh could have discovered the cause of his injury with reasonable diligence if he had addressed his night terrors with a medical professional after the shooting incident.

**B. Vilayphunh's Claims Based on the 2023 Fall Are Too Vague to Proceed**

As to Vilayphunh's claims based on his 2023 fall from the bunk bed at CFCF, AbbVie moves for a more definite statement, arguing that it cannot respond to the Amended Complaint because the filing does not reveal Vilayphunh's theory or theories of liability, or state whether he took a branded or generic form of the medication. (ECF No. 20-2 at 16–18.) When assessing a pleading filed by a *pro se* litigant, "courts must apply the applicable law, even if [the] litigant failed to mention it by name." *Vogt*, 8 F.4th at 185. Accordingly, the Court must determine whether Vilayphunh's Amended Complaint, liberally construed, provides sufficient factual matter to place AbbVie on notice of his legal claim. *See generally Twombly*, 550 U.S. at 555 (explaining that, in accordance with Rule 8, a plaintiff must provide the defendant "fair notice" of the grounds upon which his claims rest).

The thrust of Vilayphunh's Amended Complaint is that AbbVie is liable for the harm he suffered because AbbVie "authorized the release of the adverse substance, Lexapro, to the public." (Am. Compl. at 6.) However, as AbbVie correctly notes, (*see* ECF No. 20-2 at 16), Vilayphunh may not proceed on a strict liability theory, meaning AbbVie cannot be held liable under Pennsylvania law based solely on allegations that it distributed a prescription drug that Vilayphunh claims caused him harm. *See Lance v. Wyeth*, 85 A.3d 434, 453 (Pa. 2014) ("[F]or policy reasons this Court has declined to extend strict liability into the prescription drug arena."); *Hahn v. Richter*, 673 A.2d 888, 889–90 (Pa. 1996) (holding that strict liability is not available for "products such as prescription drugs, which, although dangerous in that they are not without medical risks, are not deemed defective and unreasonably dangerous when marketed with proper warnings" (quoting Restatement (Second) of Torts § 402A cmt. k)); *Talarico v. Skyjack, Inc.*, 191 F. Supp. 3d 394, 400 (M.D. Pa. 2016) ("The Pennsylvania Supreme Court in *Lance* restated that there is a bar on all strict liability claims in Pennsylvania with respect to prescription drugs and again refused to hold prescription drug manufacturers strictly liable."). Rather, to proceed against AbbVie on a products liability claim, Vilayphunh must plausibly allege negligence by stating facts showing that: "(1) [AbbVie] owed a duty of care to [him]; (2) [AbbVie] breached that duty; (3) the breach resulted in injury to [him]; and (4) [he] suffered damage." *Thompson v. Med-Mizer, Inc.*, No. 10-cv-2058, 2011 WL 1085621, at *5 (E.D. Pa. Mar. 21, 2011) (citing *Martin v. Evans*, 711 A.2d 458, 502 (Pa. 1998)); *see also Salvio v. Amgen, Inc.*, 810 F. Supp. 2d 745, 755 (W.D. Pa. 2011) ("Product Liability claims against a pharmaceutical company, under Pennsylvania law, can only be brought under a theory of negligence, not strict liability."). In contrast to strict liability, where "the focus is exclusively on the product," in the negligence arena, "the main focus is on [the defendant's] conduct." *Lance*, 85 A.3d at 458.

Product liability claims typically "fall[] into three buckets of negligent acts—defective manufacture, inadequate direction or warnings, and defective design"—although courts have also permitted general negligence claims to proceed when the theory of liability is precisely identified in the complaint. *In re Glucagon-Like Peptide-1 Receptor Agonists (GLP-1 RAS) Prods. Liab. Litig.*, No. 24-MD-3094, 2025 WL 2394047, at *32 (E.D. Pa. Aug. 15, 2025). Indeed, "the law of negligence establishes a duty, on the part of manufacturers, which can be viewed on a continuum from the requirements of: a warning of dangers, through a stronger warning if justified by the known risks, through non-marketing or discontinuance of marketing when it becomes or should become known that the product simply should not be used in light of its relative risks." *Lance*, 85 A.3d at 459–60. For that reason, "in the negligence arena . . . the substantive allegations are more important than the labels." *Id.* at 458.

Further, "Pennsylvania applies the learned intermediary doctrine to claims for failure to warn involving pharmaceutical drugs," pursuant to which "drug manufacturers must direct required drug-safety warnings to physicians, and not to patients." *Zitney v. Wyeth LLC*, 243 A.3d 241, 246 (Pa. Super. Ct. 2020). "In this context, the plaintiff [pursuing a failure to warn claim] must establish that if defendant 'had issued a proper warning to the learned intermediary, he would have altered his behavior and the injury would have been avoided.'" *Daniel v. Wyeth Pharms., Inc.*, 15 A.3d 909, 924 (Pa. Super. Ct. 2011) (quoting *Demmler v. SmithKline Beecham Corp.*, 671 A.2d 1151, 1155 (Pa. Super. Ct. 1996)); *see also Stange v. Janssen Pharms., Inc.*, 179 A.3d 45, 57 (Pa. Super. Ct. 2018) (discussing learned intermediary doctrine). "Proximate causation may be shown in learned intermediary cases through evidence that, if properly warned, the doctor either would have declined to prescribe a particular drug or would have detailed the known risks for the patient, who would then have declined the medication." *Bock v. Novartis Pharms. Corp.*, 661 F.

App'x 227, 232 (3d Cir. 2016) (citing *Daniel*, 15 A.3d at 925); *see also DiCair v. Gilead Scis., Inc.*, No. 21-cv-5486, 2022 WL 2703611, at *2 (E.D. Pa. July 12, 2022) ("[I]t is well-established in Pennsylvania that prescription drug manufacturers do not owe a duty to warn to the public.").

Vilayphunh's Amended Complaint lacks any allegations about how AbbVie was allegedly negligent and, relatedly, how that negligence caused his harm. In other words, there are no allegations explaining how AbbVie allegedly fell short in a duty—whether regarding the product itself, the warnings it provided (or failed to provide) to the physician or physicians who prescribed the medication to Vilayphunh, or in any other respect. And since Vilayphunh has not explained how, specifically, AbbVie was negligent with respect to its distribution of Lexapro, he has not adequately alleged a plausible causal link between any negligence on AbbVie's part and his harm. In sum, absent more specific factual allegations about how, if at all, AbbVie acted negligently and, relatedly, how that negligence caused Vilayphunh's harm, the Amended Complaint does not state sufficient factual matter to give AbbVie notice of the basis for his claim or claims. *See Short v. Pfizer, Inc.*, No. 22-cv-04762, 2023 WL 3919536, at *4 (E.D. Pa. June 8, 2023) ("Plaintiff does not allege any conduct by Defendant that would constitute a breach of duty or any meaningful detail related to the design of the medication that would show a lack of reasonable care."); *Smith v. Howmedica Osteonics Corp.*, 251 F. Supp. 3d 844, 854 (E.D. Pa. 2017) (concluding that allegations about a product's defects did not state a negligence claim absent specific allegations about the defendant's conduct, *i.e.*, how the defendant was negligent); *Kline v. Pfizer, Inc.*, No. 08-cv-3238, 2008 WL 4787577, at *3 (E.D. Pa. Oct. 31, 2008) (discussing learned intermediary doctrine in the context of a motion to dismiss).

AbbVie is also correct that Vilayphunh's Amended Complaint is not clear as to whether he took brand-name Lexapro at the time of his fall in 2023, or whether he was instead prescribed

a generic version of the medication. (*See* ECF No. 20-2 at 17.) "Because a generic drug is, by definition, biologically equivalent to the brand-name drug, medical professionals routinely prescribe (and pharmacists routinely dispense) the former interchangeably with the latter." *Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, 146 S. Ct. 1391, 1397 (2026) (citation modified). Vilayphunh alleges that he was initially prescribed "Lexapro (Escitalopram)," (Am. Compl. at 7), and that the medication he was taking during his incarceration, which he also describes as Lexapro, was prescribed by a physiatrist at CFCF, (*id.* at 9). Vilayphunh's extension motions reflect that he does not know who supplied the medication he was taking at the time he experienced the night terror in 2023 during which he broke his collar bone. One of the exhibits he attached to those motions is a letter he sent to the medical department at CFCF dated March 11, 2026, explaining that he was "prescribed Lexapro to help [him] deal with [his] depression and anxiety" during his incarceration from July 9, 2021, through September 2023, and seeking the "name of the Supplier of that medication." (*See* ECF No. 29 at 3; ECF No. 31 at 5.) Another exhibit reflects that on April 13, 2026, Vilayphunh requested medical records through channels available to him at the Pennsylvania Department of Corrections, which was being processed on behalf of Nazareth Hospital in Philadelphia. (*See* ECF No. 31 at 3.) In the Motion for Discovery that he attached to his response, Vilayphunh essentially asks the Court to direct defense counsel to obtain his medical records from CFCF for him. (ECF No. 33 at 5.)

It is not clear that Vilayphunh is obligated to plead whether he took a brand name or generic version of the drug as a factual matter. He is, however, required to plead as an element of a negligence claim that AbbVie owed him a duty, and whether he took brand-name Lexapro or a generic version may affect his ability to do so. *See In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 951 (6th Cir. 2014) ("Guided by the Eastern

District's analysis of Pennsylvania tort law, we predict that the Pennsylvania Supreme Court would find that Brand Manufacturers did not owe Plaintiffs a duty that could give rise to liability under Pennsylvania law." (citing *Colacicco v. Apotex, Inc.*, 432 F. Supp 2d 514, 538–39 (E.D. Pa. 2006), *aff'd*, 521 F.3d 253 (3d Cir. 2008), *vacated and remanded on other grounds*, 556 U.S. 1101 (2009)); *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 510 F. Supp. 3d 1175, 1225 (S.D. Fla. 2020) ("[T]he Court therefore predicts that the Supreme Court of Pennsylvania would hold that Plaintiffs' claims fail for lack of a duty triggering liability under Pennsylvania law."). *But see Kellogg v. Wyeth*, 762 F. Supp. 2d 694, 707 n.8 (D. Vt. 2010) ("In *Clark v. Pfizer, Inc.,* a Pennsylvania trial court held that a brand name manufacturer may be liable for negligent or intentional misrepresentation that deluded the medical community into believing a drug was effective."). In other words, as noted, Vilayphunh must provide enough factual matter to explain the nature of his claims against AbbVie. Since he has not done so here for the reasons discussed above, the Court will grant AbbVie's Motion for a More Definite Statement and allow Vilayphunh to file a second amended complaint against AbbVie based on the 2023 incident that provides more information about the factual basis for his claims.[5]

The Court will also deny Vilayphunh's Motion for Discovery. A plaintiff is not entitled to discovery unless he first states a claim. *See Iqbal*, 556 U.S. at 686 ("Because respondent's complaint is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise."); *Curran v. Venango Cnty.*, No. 23-CV-00019, 2023 WL 8374583, at *1 (W.D. Pa. Dec. 4, 2023) ("Plaintiff is not entitled to discovery until she alleges facts sufficient to elevate her claims above the speculative."). Since Vilayphunh has not yet stated a claim based on the events of 2023, he

[5] AbbVie also seeks the name of the physician who prescribed Vilayphunh's medication. (ECF No. 35 at 8.) While this information might be helpful to AbbVie for discovery purposes, it is not required as a matter of notice pleading.

is not entitled to discovery. Additionally, this case does not present a situation in which Vilayphunh was harmed by a government employee whose name he does not know and whose identity is known by the defendant. *See Alston v. Parker*, 363 F.3d 229, 233 (3d Cir. 2004) (recognizing a basis for limited early discovery in *pro se* civil rights cases filed by incarcerated litigants "who often face informational disadvantages" when those litigants are "unaware of the identities and roles of relevant actors and [who], owing to their incarceration or institutionalization, [are] unable to conduct a pre-trial investigation to fill in the gaps"), *abrogated on other ground by Iqbal*, 556 U.S. at 678. Rather, he is seeking his own medical records, which are not within AbbVie's control. Although AbbVie has represented that it "will work cooperatively with [Vilayphunh] to facilitate the release of his own medical records," (ECF No. 34 at 7), which the Court appreciates, AbbVie is not legally required to obtain Vilayphunh's own medical records for him from a third party.

## V. CONCLUSION

For the foregoing reasons, the Court will grant AbbVie's Motion. Vilayphunh's claims based on the 2021 shooting incident will be dismissed with prejudice as time barred. He will be given leave to file a second amended complaint articulating the specific factual bases for his claim or claims against AbbVie. His Motion for Discovery is denied as premature.

An order follows, which provides further information about amendment.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**

**KELLEY BRISBON HODGE, J.**